# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiffs Kelly Polanco, Adelina Melara, and Ana Mendez ("Named Plaintiffs") on behalf of themselves and the members of the "Settlement Class" (as hereinafter defined) and Defendants SRAH Bakery d/b/a Strauss Bakery, Inc. ("SRAH Bakery"), G.E.S. Bakery, Inc., Tzvi Goldstein ("Goldstein"), and Elliot Berman ("Berman") (collectively, "Defendants," and together with the Named Plaintiffs, the "Parties").

### RECITALS AND BACKGROUND

A.   On or about April 30, 2018, Plaintiff Kelly Polanco filed a Class Action Complaint against SRAH Bakery and Berman in the United States District Court for the Eastern District of New York, designated as Case No. 1:18-cv-02530-BMC, which is now pending before the Court (the "Action"). On or about August 15, 2018, the Action was amended to add Ana Mendez and Adelina Melara as plaintiffs and Goldstein as a defendant. On or about November 20, 2018, the Action was amended to add G.E.S. Bakery, Inc. as a defendant.

B.   Defendants, without admitting any wrongdoing or liability, have agreed to enter into this Agreement to avoid further expense, inconvenience and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or that relate in any way whatsoever to, the Action.

C.   Class Counsel (as hereinafter defined) has analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Named Plaintiffs and the Settlement Class (as hereinafter defined). Based upon their analysis and evaluation of a number of factors, Named Plaintiffs and Class Counsel recognize the substantial risks of continued litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years. Class Counsel and Named Plaintiffs are satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Named Plaintiffs and the Settlement Class.

D.   Named Plaintiffs and Defendants, by and through their respective counsel, have engaged in extensive settlement discussions in connection with the potential resolution of the Action. Named Plaintiffs, the Settlement Class and Defendants – subject to the approval of the Court – have elected to settle the Action pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.

E.   Strictly for the purpose of settling the Action, and without admitting any wrongdoing or liability, Defendants agree to class certification under §§ 901 and 902 of the New York Civil Practice Law and Rules ("CPLR") of the Settlement Class as defined in Section 1.32 below.

F.   The Parties agree to include a provision in the Preliminary Approval Order submitted to the Court, which provides that if this Agreement is not approved or terminated, the

1

Settlement Class shall be deemed decertified *nunc pro tunc* and the Action will proceed as if this Agreement had not been executed.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Action on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 **Agreement.** "Agreement" means this Settlement Agreement and Release.

1.2 **Authorized Claimant.** "Authorized Claimant" means each Named Plaintiff, Opt-In Plaintiff and each Class Member, or the authorized legal representative of such Class Member, who is mailed a Settlement Payment check in accordance with the terms of this Agreement. Each Named Plaintiff is deemed an Authorized Claimant upon execution of this Agreement.

1.3 **Bar Date.** "Bar Date" means the date by which any Class Member must cash the Settlement Payment check sent to him/her. Subject to the Court's approval and the provisions of Section 2.4, the Bar Date shall be ninety (90) days after the initial mailing of the Settlement Payment check by the Settlement Claims Administrator. If a Class Member did not receive the check, a skip trace will be run and, if a social security number match is found, a second check will be sent to the Class Member after which time he/she will have ninety (90) days to cash that check, or the check amount will revert to Defendants, as provided for in this Agreement.

1.4 **Class Counsel.** "Class Counsel" or "Plaintiffs' Counsel" means Jeffrey E. Goldman, Esq. and Thomas H. Andrykovitz, Esq., The Law Offices of Jeffrey E. Goldman, 501 Fifth Avenue, Suite 1900, New York, New York 10017.

1.5 **Class List.** "Class List" means a list in electronic format, preferably in Excel, that includes the names, last known addresses, social security numbers, telephone numbers (if available), and overtime hours worked during the Settlement Period, for each respective Class Member.

1.6 **Costs and Fees.** "Costs and Fees" means Plaintiffs' Counsels' attorneys' fees, costs, and expenses; the Reserve Fund; and Service Awards. Plaintiffs' Counsels' attorneys' fees, costs, and expenses shall include costs and fees associated with the Settlement Claims Administrator.

1.7 **Court.** "Court" means the United States District Court for the Eastern District of New York.

1.8 **Days.** "Days" means business days if the specified number is less than ten (10), and calendar days if the specified number is ten (10) or greater.

2

1.9 **Defendants.** "Defendants" means SRAH Bakery d/b/a Strauss Bakery, Inc., G.E.S. Bakery, Inc., Tzvi Goldstein, and Elliot Berman.

1.10 **Defendants' Counsel.** "Defendants' Counsel" means Amber M. Spataro, Esq. and Sandra T. Jimenez, Esq., Littler Mendelson, P.C., One Newark Center, 8th Floor, Newark, New Jersey 07102.

1.11 **Employment Taxes.** "Employment Taxes" means (1) all taxes an employer is required to pay arising out of or based upon the payment of employment compensation, including FICA, FUTA, and SUTA obligations, (2) all taxes required to be withheld from an employee's compensation or other income.

1.12 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Application for Final Approval.

1.13 **Final Order.** "Final Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Service Awards, approving distribution of Costs and Fees, and dismissing the Action with prejudice, among other things.

1.14 **Final Effective Date.** Provided no appeal is timely filed, the "Final Effective Date" means thirty (30) days after the Court has entered a Final Order. If an appeal is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

1.15 **Final Settlement Amount.** "Final Settlement Amount" means the sum of the Net Settlement Fund plus Employment Taxes and all Court-approved Costs and Fees.

1.16 **Gross Settlement Fund.** "Gross Settlement Fund" means Five Hundred Forty Five Thousand Dollars ($545,000), the maximum amount that Defendants agree to pay, for complete and final resolution of the Action. The Gross Settlement Fund shall be inclusive of all released class claims (as defined herein), interest, attorneys' fees, costs, expenses, taxes, claims administration fees, court costs, reserve fund, service awards, disability and workers' compensation insurance costs and other costs whatsoever.

1.17 **Individual Gross Amount.** "Individual Gross Amount" means the amount allocated to each individual Authorized Claimant pursuant to Section 3.5 prior to any deduction for taxes required to be withheld from employee compensation or other income.

1.18 **Individual Net Amount.** "Individual Net Amount" means the amount paid to the individual Authorized Claimants after deduction for taxes required to be withheld from employee compensation or other income, pursuant to Section 3.1(C).

3

1.19 **Named Plaintiffs.** "Named Plaintiffs" refer to Kelly Polanco, Ana Mendez, and Adelina Melara.

1.20 **Net Settlement Fund.** "Net Settlement Fund" means the aggregate balance to be allocated to all Authorized Claimants after the deduction of Costs and Fees and Employment Taxes.

1.21 **Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit as authorized in the Preliminary Approval Order.

1.22 **Objector.** "Objector" means an individual Authorized Claimant who properly files an objection to this Agreement.

1.23 **Opt-in Plaintiffs.** "Opt-in Plaintiffs" refer to Briselda Sosa, Minerva Mendoza, Jose Zepeda, Dina Velazquez, Geronimo Sohom, and Carmen Rosales.

1.24 **Opt-out Statement.** "Opt-out Statement" means a written, signed statement that an individual Class Member has elected to exclude himself or herself ("opt out") from the settlement.

1.25 **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court: (i) certifying the Settlement Class for settlement purposes; (ii) preliminarily approving the terms and conditions of this Agreement; (iii) appointing The Law Offices of Jeffrey E. Goldman as Class Counsel; (iv) directing the manner and timing of providing Notice to the Settlement Class; and (v) setting the dates and deadlines for effectuating settlement, including the Bar Date, date of the mailing of Notice, and the Fairness Hearing date; among other things.

1.26 **Qualified Settlement Fund.** "Qualified Settlement Fund" or "QSF" means the account established and controlled by the Settlement Claims Administrator for the purposes of retaining and distributing the Final Settlement Amount in accordance with this Agreement. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement, the Preliminary Approval Order and the Final Order. Interest, if any, earned in the QSF will become part of the Net Settlement Fund to be distributed to the Authorized Claimants.

1.27 **Released Class Claims.** "Released Class Claims" means any and all claims alleged in the Complaint, including those based on New York State law, and/or common law, arising during the Settlement Period, whether known or unknown, that were asserted in the Action. The Released Class Claims include, but are not limited to, statutory, constitutional, contractual or common law claims for unpaid wages, interest on such claims, penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief. Only Class Members, opt-ins and Authorized Claimants who cash their checks are settling and releasing their Fair Labor Standards Act claims.

1.28 **Released Defendants.** "Released Defendants" means SRAH Bakery d/b/a Strauss Bakery, Inc. and G.E.S. Bakery, Inc. and its insurers, any related or affiliated companies or entities, as well as any principals, officers, directors, members, employees, or agents of any such

4

companies or entities including, but not limited to, individuals Tzvi Goldstein and Elliot Berman.

1.29 **Service Award.** "Service Award" means that portion of the Final Settlement Amount, if any, requested by the Named Plaintiffs and approved by the Court as a reasonable incentive award to the Named Plaintiffs for representing the interests of the Class Members.

1.30 **Settlement Claims Administrator.** "Settlement Claims Administrator" means the qualified administrator selected pursuant to Section 2.2.

1.31 **Settlement Class and Class Member.** "Settlement Class" (collectively) and/or "Class Member" (individually) comprises the collective and the class alleged in the Action and means: the 85 individuals listed in the document marked as Goldstein Exhibit 17 during Goldstein's deposition. The Settlement Class does not include any individuals not identified in Goldstein Exhibit 17.

1.32 **Settlement Checks.** "Settlement Checks" means checks issued to Authorized Claimants for their Individual Net Amount.

1.33 **Settlement Period.** "Settlement Period" means April 30, 2012 through the date of the Agreement.

2. **PRELIMINARY APPROVAL AND PROCEDURE**

2.1 **Settlement Class.** Strictly for purposes of settling the Action, and without admitting any wrongdoing or liability, Defendants agree to class certification pursuant to CPLR §§ 901 and 902 to include all Class Members as defined in Section 1.32 above.

2.2 **Settlement Claims Administrator.**

   A. **Retention.** Within fifteen (15) days after the filing of a Preliminary Approval Motion, Plaintiffs shall engage a Settlement Claims Administrator, as agreed by the Parties.

   B. **Responsibilities of Settlement Claims Administrator.** The estimate of fees is $8,000 by SSI. The Settlement Claims Administrator shall be responsible for: (i) printing and disseminating to the Settlement Class the initial settlement checks; (ii) performing a skip trace and resending, within five (5) day of receipt, any check returned without a forwarding address, or resending to those with a new forwarding address; (iii) responding to inquiries from the Parties; (vii) distributing the Settlement Checks to Authorized Claimants and/or Court-approved Costs and Fees, as necessary; (viii) preparing, sending and/or wire-transferring Class Counsel's attorneys' fees, expenses, and costs; (ix) mailing Service Awards and Settlement Checks in accordance with this Agreement and the Final Order; (x) paying all Employment Taxes, including issuing the W-2 and 1099 Forms for all amounts paid from the Final Settlement Amount; (xi) responding to inquiries of Class Members regarding procedures for filing objections or Opt-out Statements; (xii) referring to

Class Counsel all inquiries by Class Members or Authorized Claimants regarding matters not within the Settlement Claim Administrator's duties specified herein; (xiii) responding to inquiries of counsel for the Parties relating to the Settlement Claims Administrator's duties specified herein; (xiv) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xv) maintaining adequate records of its activities, including the dates of the mailing of Notices, returned mail and any and all other actual or attempted written or electronic communications with the Settlement Class; (xvi) timely responding to communications from the Parties and their counsel; (xvii) providing all information, documents and calculations necessary to confirm the Final Settlement Amount; (xviii) returning any remaining reversionary QSF funds and (xix) such other tasks as the Parties mutually agree.

C. **Access to the Settlement Claims Administrator.** The Parties will have equal access to the Settlement Claims Administrator. Class Counsel and Defendants' Counsel agree to use their best efforts to cooperate with the Settlement Claims Administrator and provide reasonable assistance in administering the settlement.

2.3 **Preliminary Approval Motion.**

A. Within seven (7) days of complete execution of this Agreement, Class Counsel shall file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, Class Counsel will submit to the Court: (1) the proposed Notice, (2) the proposed Preliminary Approval Order, (4) an executed version of this Agreement, and (5) the necessary documents, memorandum, affidavits and exhibits for the purposes of certifying a Class for settlement purposes under CPLR §§ 901 and 902, and preliminarily approving the settlement. Defendants' Counsel will be given five (5) days to review the terms, form, and content of the proposed Notice and Preliminary Approval Order and all other documents to be filed with the Court as part of the Preliminary Approval Motion, before those documents are filed with the Court. Defendants may review the terms of the Preliminary Approval Motion, as well as the items listed in Section 2.3(A)(5), above, to ensure they are consistent with this Agreement. The Preliminary Approval Motion also will seek the setting of a date for a Fairness Hearing on the earliest practicable date.

B. In the Preliminary Approval Motion, Class Counsel shall inform the Court of the intended process to obtain a "Final Order" in accordance with the Court-approved schedule, so that at the Fairness Hearing, the Court may, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Action with prejudice; (4) award Costs and Fees, including any Service Awards; and (5) authorize distribution and payment to the Authorized Claimants.

C. Plaintiffs will file the Preliminary Approval Motion as "unopposed." Defendants may not oppose such application so long as it is consistent with the terms and conditions of this Agreement.

6

**2.4** **Notice to Class Members.**

    (A) **Class List to Settlement Claims Administrator.** Within fourteen (14) days of the Preliminary Approval Order being signed by the Court, Defendants' Counsel shall provide the Settlement Claims Administrator with the Class List.

    (B) **Class List Review.** At least 14 days prior to any mailing of Notice, Defendants shall provide Class Counsel with the Class List and records of overtime hours worked by the Class Members during the Settlement Period.

    (C) **Notice.** The Notice will inform Class Members about this settlement as well as their waiver of any interest and liquidated damages, and will also advise them of the opportunity to object to, opt-out of, or participate in the settlement, and to appear at the Fairness Hearing. Within twenty (20) days of the entry of the Preliminary Approval Order, or as otherwise ordered by the Court, the Settlement Claims Administrator shall mail to all Class Members, via First Class United States Mail, the Court-approved Notice.

    (D) **Skip Trace and Re-mailing.** If the Notice is returned as undeliverable, the Plaintiffs' Counsel shall take all reasonable steps to obtain a current address, including one skip trace, and shall re-mail the Notice to such address. To the extent that Class Counsel is able to obtain better addresses for any Class Member, it shall provide such updated or most recent addresses to the Settlement Claims Administrator for mailing purposes. If the skip trace results in a Social Security Number mismatch, no further action will be taken. If there is no Social Security Number mismatch and an updated address is found, a second settlement check will be mailed to the respective Authorized Claimant and a stop payment will be issued on the original settlement check to the respective Authorized Claimant. The Settlement Claims Administrator shall also mail a Notice to any Class Member who requests them after the initial mailing of Notice and before the Bar Date. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notices returned as undeliverable after the first mailing, including those returned as undeliverable after any subsequent mailing. All costs of locating Class Members will be paid from the QSF.

    (E) **Bar Date.** A Class Member will be deemed an Authorized Claimant unless he or she opts-out before the Bar Date. The Bar Date shall be (i) ninety (90) days from the date of the initial mailing or as otherwise set by the Court..

    (F) Upon execution of this Agreement, the Named Plaintiffs will be deemed Authorized Claimants.

**2.5** **Opt-out: Class Members who Opt-out.**

    (A) Class Members who elect to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, postage prepaid, a written, signed statement to Plaintiffs' counsel that states he or she is opting out of the settlement ("Opt-out Statement"). In order to be valid, the Opt-out Statement must include the

7

name, address, and telephone number of the Class Member, and a statement indicating his or her intention to opt-out. To be effective, an Opt-out Statement must be postmarked by United States Postal Service on or before the Bar Date.

(B) The time period to opt-out of the settlement ("Opt-out Period") shall be on or before the Bar Date.

(C) Plaintiffs' counsel shall stamp the received date on the original of each Opt-out Statement and send copies of each Opt-out Statement to Defendants' Counsel no later than five (5) days after receipt. Plaintiffs' counsel shall also file with the Clerk of the Court stamped copies of any Opt-out Statements prior to the Fairness Hearing. Plaintiff's, within five (5) of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email The Settlement Claims Administrator shall retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(D) Any Class Member who does not timely submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Final Order, and will have any Released Class Claims released and dismissed with prejudice.

**2.6   Objectors: Authorized Claimants who Object to Settlement.**

(A) Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing no later than ninety (90) days after mailing of the Notice has been mailed. To be considered, such statement must be mailed to Plaintiffs' counsel via First Class Mail, postage pre-paid, and postmarked by the United States Postal Service on or before the Bar Date. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, and telephone number of the Class Member making the objection. Plaintiffs' counsel will stamp the date received on the original and send copies of each objection, supporting documents, as well as a copy of the Notice and settlement check mailed to the Objector, to Class Counsel and Defendants' Counsel by email delivery no later than five (5) days after receipt of the objection. Plaintiffs' counsel shall also file the date-stamped originals of any and all objections with the Court. Addresses, telephone numbers and other identifying information (other than names) shall be redacted from all objection statements, supporting documents, and other documents filed with the Court pursuant to this paragraph.

(B) Any Authorized Claimant who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections.

8

    An Objector may withdraw his or her objections at any time. Any Class Member who has elected to opt-out may not submit objections to the settlement.

 (C) The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.7 List & Calculations to Counsel.**

 (A) No later than fifteen (15) days prior to the Fairness Hearing, the Settlement Claims Administrator shall certify jointly to Class Counsel and Defendants' Counsel: (a) a list of all Authorized Claimants, (b) a list of all Objectors, and (c) a list of all Class Members who timely submitted an Opt-out Statement. Throughout the period of claims administration, the Settlement Claims Administrator shall provide reports to the Parties upon their request regarding (i) the status of the mailing of the Notices to Class Members, (ii) the status or progress of the claims administration process, (iii) anticipated or expected distribution of the Settlement Checks, and (iv) any other aspect of the claims administration process. Beginning the second Friday after Notice is mailed to Class Members, the Settlement Claims Administrator shall provide counsel for the Parties a weekly update on the number of Authorized Claimants, Objectors, and opt-outs.

 (B) Within ten (10 days after final approval by the Court, the Settlement Claims Administrator shall provide notice by email to Plaintiffs' Counsel and Defendants' Counsel of the Final Settlement Amount, together with an Excel spreadsheet that designates each Authorized Claimant, his/her allocated share, and the appropriate totals and calculations to confirm the Final Settlement Amount ("Notice of Final Settlement Amount").

**2.8 Fairness Hearing and Application for Final Approval and Dismissal.**

 (A) After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file supporting documents for final approval of the settlement ("Application for Final Approval"). The Application for Final Approval may contain a report from the Settlement Claims Administrator, an application for attorneys' fees, and supporting affidavits and documents from Class Counsel regarding the fairness, adequacy and reasonableness of the settlement or any aspect related to this Agreement. The Application for Final Approval shall also include a proposed Final Order. Defendants will be given five (5) days to provide approval of the terms, form, and content of all documents filed, including the proposed Final Order, before they are filed with the Court.

 (B) At the Fairness Hearing and through the Application for Final Approval, the Parties shall request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) enjoin all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released

9

by this Agreement; (3) order the Settlement Claims Administrator to distribute Settlement Checks to the Authorized Claimants and any Service Awards to the Named Plaintiffs as described in this Agreement; (4) order the Costs and Fees to be paid from the QSF; (5) order the Settlement Claims Administrator to pay all Employment Taxes from the QSF; (6) dismiss this Action with prejudice, and release the Released Class Claims as against Released Defendants; (7) enter a Final Order in accordance with this Agreement; and (8) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

(C) The Final Order may further order the Settlement Claims Administrator to: (1) provide verification to Class Counsel and Defendants' Counsel that it has distributed the Settlement Checks, and (2) retain copies of all of the endorsed Settlement Checks.

## 3.0 SETTLEMENT TERMS AND DUE DILIGENCE REVIEW

### 3.1 Amount.

Defendants agree to pay a maximum amount of Five Hundred Forty-Five Thousand Dollars ($545,000.00) which shall be used for calculation and allocation purposes to fully resolve and satisfy any and all amounts to be paid to all Authorized Claimants, any Court-approved Costs and Fees, and Employment Taxes. All Settlement Claims Administrator costs shall be included in the Gross Settlement Fund amount of $545,000.00.

(A) **Funding the QSF.** Defendants shall fund the QSF as follows:

  (1) Defendants shall fund the Qualified Settlement Fund in an amount equal to the Final Settlement Amount.

  (2) Defendants shall fund the Qualified Settlement Fund within ten (10) days after the Final Effective Date.

(B) **Deduction of Employer and Employee Payroll Taxes.**

  (1) All applicable Employment Taxes will be paid out of the QSF by the Settlement Claims Administrator. Defendants will provide the Settlement Claims Administrator such information as is necessary for the Settlement Claims Administrator to make proper employee tax withholdings, issue and file tax-related forms, and comply with all tax reporting obligations.

  (2) The Settlement Claims Administrator shall calculate the appropriate and regular tax deductions from each Authorized Claimant's Individual Gross Amount (as calculated by Section 3.5) to determine the Individual Net Amount. The Individual Net Amount will be the amount reflected on the Settlement Checks.

**3.2** **Payments from the QSF.** The Settlement Claims Administrator shall make the following payments from the QSF, once the QSF is funded as described in Section 3.1(A):

    (1) Within five (5) days of the QSF being funded as described in Section 3.1(A)(1), the Settlement Claims Administrator shall (i) mail all Settlement Checks to Authorized Claimants, (ii) mail any and all Service Awards to the Named Plaintiffs, (iii) mail or wire-transfer payment to Class Counsel in the amount of Court-approved attorneys' fees and costs, and (iv) pay all Employment Taxes to the appropriate government authorities.

    (2) The Settlement Class be paid from what remains in the QSF following payment of Class Counsel's attorneys' fees and costs and the Service Awards, and after the Reserve Fund has been set aside. The remaining amount in the QSF shall be divided among the Settlement Class in an amount proportionate to the estimated overtime hours worked by each respective class member during the Settlement Period.

    (3) The amount payable to each Authorized Claimant shall be paid by the Claim Administrator in two checks split evenly (i.e., 50%/50%) as follows:

        (i.) one payroll check from which all applicable FICA, FUTA, and SUTA taxes shall be withheld; and

        (ii.) one check for which a Form 1099 shall be issued to each Authorized Claimant.

    (4) Authorized Claimants will have ninety (90) days from receipt of the Settlement Checks to cash their respective settlement check. Settlement Checks uncashed after ninety (90) days shall be subject to a skip trace on the applicable Authorized Claimant. If the skip trace results in a Social Security Number mismatch, no further action will be taken. If there is no Social Security Number mismatch and an updated address is found, a second settlement check will be mailed to the respective Authorized Claimant and a stop payment will be issued on the original settlement check to the respective Authorized Claimant.

    (5) Any amounts representing uncashed Settlement Checks, Service Awards, the Reserve Fund, or any other amount remaining in the QSF ninety (90) days after the mailing of the final payment will revert back and be refunded to SRAH Bakery, so long as it comports with Section 3.1(B).

**3.3** **Amounts Payable as Attorneys' Fees, Expenses and Costs.**

    (A) At the Fairness Hearing and in connection with the Application for Final Approval, Class Counsel will petition the Court for an award of no more than One Hundred Eighty-One Thousand Six Hundred Sixty Six Dollars and Sixty Six Cents ($181,666.66), for actual attorneys' fees, which represents 33.3% of the Gross Settlement Fund for costs and expenses incurred in connection with this Action.

    Defendants shall not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

 (B) The substance of Class Counsel's application for attorneys' fees, expenses and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action. The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

 (C) Defendants shall fund the Court-approved Costs and Fees representing Class Counsel's costs, fees and expenses in the manner described in Section 3.1(A).

3.4 **Service Award to Named Plaintiffs.**

 (A) In return for services rendered to the Class, at the Fairness Hearing, Named Plaintiffs may apply to the Court to receive a Service Award of no more than Five Thousand Dollars and Zero Cents ($5,000.00) each from the QSF before any distributions or reserve, and Opt-in Plaintiffs may apply to the court to receive a Service Award of no more than One Thousand Five Hundred Dollars and Zero Cents ($1,500.00) each from the QSF before distribution or reserve.

 (B) The application for a Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action. The outcome of the Court's ruling on the application for a Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

3.5 **Net Settlement Fund and Allocation to Class Members.**

 (A) **Gross Earnings.** First, each Class Member's overtime earnings for work performed during the Settlement Period, will be determined. Such information will be provided in the Class List to the Settlement Claims Administrator pursuant to Section 2.4(A).

 (B) **Percentage Allocation.** Second, each Class Member's percentage is calculated by (1) taking the individual Class Member's overtime hours worked during the Settlement Period, and (2) dividing it by the sum of gross overtime hours worked for all Class Members during the Settlement Period as the denominator. The denominator for each Class Member will be the same number. As a result of this calculation, the total of all Class Members' numerators must equal the denominator.

 (C) **Amount Allocation.** Third, the Gross Settlement Fund, less Costs and Fees, shall be multiplied by each Authorized Claimant's percentage allocation as calculated in Section 3.5(B). This represents the individual amount allocated to each Authorized Claimant – or Individual Gross Amount.

**3.6 Tax Characterization.**

(A) The Settlement Check issued to Authorized Claimants pursuant to Section 3.2(3)(i) will be deemed W-2 wage income. The Settlement Check issued to Authorized Claimants pursuant to 3.2(3)(ii) will be deemed 1099 income. All Costs and Fees and expenses will be considered 1099 non-wage income. All wage payments to Authorized Claimants shall be subject to applicable payroll and withholding taxes. All Costs and Fees shall be paid from the QSF, unless this Agreement is terminated.

**3.7 Release of Claims.**

(A) By operation of the entry of the Final Order, and except as to such rights or claims as may be created by this Agreement, each individual Class Member who does not timely opt-out pursuant to this Agreement forever and fully releases and discharges Released Defendants from all Released Class Claims.

(B) By operation of the entry of the Final Order, and except as to such rights or claims as may be created by this Agreement, each individual Authorized Claimant forever and fully releases and discharges Released Defendants from all Released Class Claims.

(C) By operation of the entry of the Final Order, and except as to such rights or claims as may be created by this Agreement, Named Plaintiffs and Opt-in Plaintiffs forever and fully release and discharge Released Defendants from all Released Class Claims as well as any other claim of any kind under federal, state, or local law or common law based on events that took place from the beginning of time through the Final Effective Date.

(D) Except as provided in this Agreement, upon payment of all Costs and Fees as approved by the Court, Class Counsel, on behalf of the Authorized Claimants and Class Members, irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Released Defendants for attorneys' fees, expenses, disbursements and all other costs and fees associated with Class Counsel's representation of the Class. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses, disbursements and all other costs and fees associated with Class Counsel's representation in the Action.

**3.8 Non-Admission of Liability.**

(A) By entering this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to the Named Plaintiffs, Opt-in Plaintiffs, and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to fully and finally resolve and settle all disputes with the Named

Plaintiffs, Opt-in Plaintiffs, and Class Members. Settlement of the Action, negotiation and execution of this Agreement, and all acts performed and documents executed pursuant to or in furtherance of this Agreement or the settlement: (1) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all complaints or other papers filed by Plaintiffs in the Action; and (2) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative, or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

**4.0   INTERPRETATION AND ENFORCEMENT**

**4.1   Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**4.2   No Assignment.** Class Counsel and Named Plaintiffs, on behalf of the individual Class Members and Opt-In Plaintiffs, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

**4.3   Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**4.4   Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs, Opt-in Plaintiffs, and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns. Notwithstanding the passage of any legislation, bill, regulation, or other change in the law that may materially affect the rights of Named Plaintiff, Opt-in Plaintiffs, and all Class Members in the Action, this Agreement is binding.

**4.5   Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

4.6 **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

4.7 **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles.

4.8 **Continuing Jurisdiction.** The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Parties may not unilaterally petition the Court to modify this Agreement or to increase the Defendants' payment obligations, except to the extent provided in this Agreement.

4.9 **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

4.10 **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

4.11 **When Settlement Becomes Effective.** The settlement is conditioned upon approval of the Court and becomes effective once the settlement is approved by the Court.

4.12 **Posting of Agreement.** Within fifteen (15) days of the Court's approval of the Agreement, Defendants shall post a notice of settlement in the workplace in English and Spanish.

4.13 **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

4.14 **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this

15

deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

4.14 **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

AGREED:

| KELLY POLANCO | ANA MENDEZ |
|---|---|
| /s/ | /s/ |
| Date: 1/26/19 | Date: 1/26/19 |

ADELINA MELARA

/s/

Date: 1/26/19

| SRAH BAKERY D/B/A STRAUSS BAKERY, INC. | G.E.S. BAKERY, INC. |
|---|---|
| By: _____ | _____ |
| Date: _____ | Date: _____ |

| TZVI GOLDSTEIN | ELLIOT BERMAN |
|---|---|
| _____ | _____ |
| Date: _____ | Date: _____ |

FIRMWIDE:161852628.3 099756.1001

Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

AGREED:

KELLY POLANCO

_____

Date: _____

ANA MENDEZ

_____

Date: _____

ADELINA MELARA

_____

Date: _____

SRAH BAKERY D/B/A STRAUSS BAKERY, INC.

By: _Tzvi Goldstein_

Date: _2-8-19_

G.E.S. BAKERY, INC.

_Tzvi Goldstein_

Date: _2-8-19_

TZVI GOLDSTEIN

_[signature]_

Date: _2-8-19_

ELLIOT BERMAN

_[signature]_

Date: _2-8-19_

FIRMWIDE:162044541.2 099756.1001

16